NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTOPHER J. CUNNINGHAM, | ) | No. C 10-5371 LHK (PR) |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| vs. | ) | |
| DOMINGO URIBE, JR., | ) | |
| Respondent. | ) | |

Petitioner, a state prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the petition should not be granted. Respondent filed a motion to dismiss for failure to exhaust. The Court granted Respondent's motion, and Petitioner requested dismissal of his unexhausted claims. The Court granted Petitioner's request, and ordered Respondent to show cause on the remaining four exhausted claims. Respondent has filed an answer. Although given an opportunity, Petitioner has not filed a traverse. Having reviewed the briefs and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented, and DENIES the petition.

**PROCEDURAL HISTORY**

On December 18, 2007, a jury found Petitioner guilty of assault with a deadly weapon,

battery with serious bodily injury, and false imprisonment, and found true that Petitioner personally inflicted great bodily injury. (Resp. Memo. P & A at 1.) The trial court sentenced Petitioner to a term of twenty-five years, four months in state prison. (*Id.*) On May 21, 2009, the California Court of Appeal affirmed the judgment. (Resp. Ex. 6.) On September 9, 2009, the California Supreme Court denied Petitioner's petition for review. (Resp. Exs. 7, 8.)

On November 29, 2010, Petitioner filed the underlying federal petition for writ of habeas corpus. On June 14, 2011, Respondent filed a motion to dismiss for failure to exhaust state court remedies. On October 27, 2011, the Court granted Petitioner's request to dismiss his unexhausted claims, and ordered Respondent to answer the four exhausted claims.

## BACKGROUND

### I.     The Prosecution's Case

> We view the evidence in the light most favorable to the People and presume the existence of every fact the trier could find. (*People v. Ochoa* (1993) 6 Cal. 4th 1199, 1206.)
>
> David Ortiz met Mike Williams about two or three months before the incident that led to charges being filed against defendant. Williams and Ortiz consumed methamphetamine together. Ortiz met defendant, whom he knew as "Riot," at Williams's house about a month before the crime occurred.
>
> About a week prior to the offense, Ortiz and Williams had a disagreement concerning the purchase of a trailer. Williams had helped Ortiz locate a trailer that was for sale and had offered to broker the sale for $700. After learning that Ortiz had purchased the trailer directly from the seller for $500, Williams became angry and demanded a $200 finder fee. Ortiz did not pay him the fee, but told him they would work something out.
>
> ### A.     The Attack on Ortiz
>
> In November 2006, Eli Smith was living in a garage that had been converted into an apartment. On November 10, 2006, around 8:00 or 9:00 p.m., Ortiz called Smith, who had previously expressed an interest in purchasing a pressure washer that Ortiz had acquired. Ortiz offered to bring the washer to Smith's residence. When Ortiz arrived, Smith was there with two young adult females. Ortiz and Smith smoked some methamphetamine while they negotiated a deal for the washer. Ortiz then went to the kitchen area to get a soda.
>
> Just prior to being struck, Ortiz heard some cars drive up and then heard the door to the apartment "burst open." He could tell that people had entered the apartment "rapidly," but he was not concerned. As he reached into the refrigerator, some people came into the kitchen area. Ortiz heard a scream, which caused him to turn around. As he turned, he was struck on his forehead with a metal object, possibly a pipe. After the first blow, he fell to

one knee and tried to cover his head.  He was hit with the pipe on the back of his head and neck, as well as on his back, shoulder, and left hand.  He also was punched and kicked.  More than one person participated in the attack.

Ortiz panicked when his attackers threatened to kill him and began discussing duct tape.  Ortiz noticed he was bleeding.  He believed he was going to die if he did not do something.  He summoned his strength and charged at one of his attackers, then turned around and dove backwards through a window.  When he landed on the ground outside, Williams grabbed him and said, "You did me dirty."  Ortiz understood that Williams was referring to the deal for the trailer.  Ortiz broke free, ran to a residence across the street, and yelled for the neighbor to call 911.

A physician testified that Ortiz suffered a concussion, lacerations to the head and wrist, a punctured lung, a broken neck, and scapular fractures.  Initially, his injuries were deemed potentially life threatening.  He was hospitalized for five days.  His injuries were consistent with having been hit multiple times with a hard object.

### B.     Ortiz Identifies Defendant

Ortiz testified that he believes Deputy Brandon Austin saved his life.  Austin was the first officer to arrive at the scene.  While Ortiz was in the hospital, Austin came to question him about the beating.  At that time, Ortiz was taking a lot of morphine for pain.  At trial, Ortiz verified that his signature appears on photographic lineup instructions, though he testified that he did not remember whether Austin showed him photographs while he was in the hospital.  He also verified that his initials appear under photographs of defendant and Williams.  He testified that when he was in the hospital he was aware of who had assaulted him.

Austin testified that when he first interviewed Ortiz in the hospital, Ortiz was in and out of consciousness.  He told Austin that he was in Smith's kitchen when he heard a vehicle pull up.  Suddenly, he was being hit over the head with an object.  Three or four people were involved in the beating.  He told Austin he was not sure who beat him, but that he would be killed if he told Austin who did it.  The next day, Austin met with Ortiz in the hospital and Ortiz told him defendant was his primary attacker.  He also named "Michael Winters" and "Tony" as suspects.  Austin prepared photo lineups for defendant and for Williams, who lived at the address Ortiz had given for Michael "Winters."  Ortiz positively identified both defendant and Williams.  Apart from Ortiz's identification, Austin did not find any evidence connecting defendant to the crime.

### C.     Ortiz Invokes the Fifth Amendment

After testifying about his personal background, including his history of drug use, Ortiz invoked his Fifth Amendment right not to testify concerning facts relating to a pending criminal matter.  Outside the presence of the jury, the trial court ruled it would not extend a grant of judicial immunity to Ortiz, and that his testimony would be struck if he continued to exercise his right against self incrimination.  The court noted that the judge at defendant's preliminary hearing had ruled that the transcript could not be used at trial if Ortiz became unavailable because *Brady* [FN2] material had not been provided to the defense in a timely manner.  At that point, the prosecution

offered Ortiz immunity pursuant to section 1324.

> FN2. *Brady v. Maryland* (1963) 373 U.S. 83 [requiring the government to disclose exculpatory evidence to the defendant on its own motion].

Ortiz resumed his testimony, admitting that he was currently on felony probation and that in August 2006 he had been convicted of lying to a police officer. He also had pled guilty to receiving stolen property in December 1991. Under the grant of immunity, he admitted he had pawned property that had been stolen from a man named David Key. He also admitted he knew he could have been arrested for having done so, and that an arrest would have violated his probation. He also stated he had spoken with a detective a month before defendant's preliminary hearing and that he was told charges would not be brought against him in the Key matter because an offense could not be proven.

### D. Ortiz Refuses to Confirm His Identification of Defendant

Ortiz testified he knew who had attacked him, but that he did not want to identify the perpetrators in court because he feared for his life and for his children. He admitted he had identified his attackers before, at a time when he was in the witness protection program. He was later kicked out of the program after he was caught smoking a cigarette in the hotel room that he was staying in. At the time of trial, he did not trust the district attorney's office and he did not want to testify. The only reason he came to court was because if he had refused he could have been found in contempt, which might have resulted in a violation of his probation.

Ortiz acknowledged that when he testified at the preliminary hearing he took an oath to tell the truth, and he admitted he told the truth as he saw it at the time. However, when the prosecution asked him to verify that he had identified defendant at the preliminary hearing as one of his attackers, Ortiz responded he could not answer out of fear for his safety. When asked by defendant's counsel if the real reason he didn't want to answer was that the story he had told earlier was not true, Ortiz answered "no." An officer with the district attorney's office testified that during his preliminary hearing testimony, Ortiz twice turned toward Williams, made eye contact, smiled, and nodded his head.

## II. The Defense

Lisa Roberge testified that on November 10, 2006, starting around 7:30 or 8:00 p.m., she was helping her former boyfriend Michael Warren move into his new residence. Defendant and his girlfriend Isabella were also there, moving into the attached converted garage. Around 10:00 p.m., they told Roberge that they were going to the garage to watch a movie and go to sleep. Roberge was at the residence until early the next morning. During that time, she did not see defendant leave. She would have noticed if defendant had left, because the house's only exit was blocked with possessions.

Mark Danzart testified that after his arrest in January 2007, he told Detective Chris Vivian that in October 2006 he and Ortiz had entered David Key's house one morning while Key was asleep. Ortiz threw a blanket over Key and struck him with a flashlight. Danzart then detained Key while Ortiz

went through the house removing items, including musical instruments. Ortiz told Danzart that Key owed him money and had sold him a stolen van. On cross-examination, Danzart admitted he is a friend of defendant and that he knew defendant had been arrested for assaulting Ortiz when he made his statements to Vivian.

Vivian testified that he interviewed Ortiz in January 2007. Ortiz told Vivian that he had purchased a van from Key in exchange for methamphetamine and cash. Ortiz admitted that he had knowingly possessed stolen property, namely, a guitar and a camera, but he denied any involvement in the Key robbery.

The parties stipulated that if called to testify, Deputy Joe Gossett would say that he spoke with Ortiz at the hospital. Ortiz told him Williams was one of his main assailants and that Williams was the person who had hit him with the pipe.

(Resp. Ex. 6 at 2-6.)

## DISCUSSION

A.    Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

1  "[A] federal habeas court may not issue the writ simply because the court concludes in its
2  independent judgment that the relevant state-court decision applied clearly established federal
3  law erroneously or incorrectly. Rather, the application must also be unreasonable." *Id.* at 411.
4  A federal habeas court making the "unreasonable application" inquiry should ask whether the
5  state court's application of clearly established federal law was "objectively unreasonable." *Id.* at
6  409.

B.  <u>Analysis</u>

In the petition, Petitioner claims that: (1) the trial court violated his right to confront and cross-examine the victim; (2) there was insufficient evidence of identity to convict him; (3) the trial court improperly admitted the victim's prior statements on identity; and (4) the trial court improperly instructed the jury on how much weight to give identification evidence.

1.  <u>Confrontation Clause</u>

Petitioner claims that the trial court denied him the right to confront and cross-examine Ortiz at trial. After conducting an evidentiary hearing on Ortiz's refusal to testify regarding identification, the trial court concluded that Ortiz was "purposefully evasive" in his refusal to identify the attackers, and that Ortiz was untruthful when stating that he did not remember identifying anyone when he was in the hospital. (Resp. Ex. 6 at 7.) The trial court concluded that the prior identifications at the hospital and at the preliminary hearing would be admissible as prior inconsistent statements. (*Id.* at 8.) The trial court further ruled that it would not find Ortiz "unavailable." (*Id.*)

The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. The federal confrontation right applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403 (1965). A primary interest secured by the Confrontation Clause is the right of cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). However, "the Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *United States v. Owens*, 484 U.S. 554, 559 (1988) (emphasis in original) (quoting

*Kentucky v. Sincer*, 482 U.S. 730, 739 (1987)).

The Confrontation Clause applies to all "testimonial" statements. *See Crawford v. Washington*, 541 U.S. 36, 50-51 (2004). "Testimony . . . is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51 (citations and quotation marks omitted). The Confrontation Clause applies not only to in-court testimony but also to out-of-court statements introduced at trial, i.e., "testimonial hearsay," regardless of the admissibility of the statements under state laws of evidence. *Id.* at 50-51. Out-of-court statements by witnesses that are testimonial hearsay are barred under the Confrontation Clause unless (1) the witnesses are unavailable, and (2) the defendants had a prior opportunity to cross-examine the witnesses. *Id.* at 59. However, the Confrontation Clause does not bar the admission of testimonial hearsay when the declarant appears for cross-examination at trial. *Id.* at 59 n.9 (citing *California v. Green*, 399 U.S. 149, 162 (1970)). Furthermore, the Confrontation Clause is not violated by the admission of a prior identification by a witness who is unable, because of memory loss, to testify concerning the basis for the identification. *Felix v. Mayle*, 379 F.3d 612, 617-18 (9th Cir. 2004) (citing *Owens*, 484 U.S. at 564), overruled on other grounds by *Mayle v. Felix*, 545 U.S. 644 (2005).

The California Court of Appeal considered and rejected Petitioner's claim.

> Defendant insists that the prosecution should have been barred from calling Ortiz because it chose not to pursue a finding of contempt when he refused to identify defendant at trial. This claim fails. While it is true that trial courts should undertake coercive measures before finding that a reluctant witness has become unavailable (*see, e.g.*, *People v. Bunyard* (2009) 45 Cal. 4th 836, 848-849), in the present case the court explicitly declined to make a finding of unavailability. Defendant offers no authority for the proposition that prosecutors are required to initiate contempt proceedings against available noncooperative witnesses.
>
> Defendant also claims that where the sole issue at trial is identification, a witness's refusal to testify on that issue amounts to a violation of the confrontation clause. We disagree. Generally speaking, "'the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' [Citation.]" (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 679 (*Van Arsdall* )). Ortiz was present at trial and testified extensively regarding the circumstances of the crime and his reasons for refusing to identify his attackers in court. With Ortiz in front of

> the jury, defendant was given a full and fair opportunity to probe and expose infirmities in his testimony through cross-examination. Defendant also had the opportunity to impeach Ortiz's credibility with evidence of prior criminal conduct, including Danzart's testimony concerning the robbery of David Key.
>
> Defendant also claims the trial court denied him an opportunity to question Ortiz as to whether it was a fear of committing perjury, rather than a fear of retaliation, that motivated him to refuse to identify defendant at trial. Again, we discern no constitutional violation.
>
> "As long as the cross-examiner has the opportunity to place the witness in his or her proper light, and to put the weight of the witness's testimony and credibility to a reasonable test which allows the fact finder fairly to appraise it, the trial court may permissibly limit cross-examination to prevent undue harassment, expenditure of time, or confusion of the issues. [Citations.] Thus, a trial court's exercise of discretion to exclude evidence does not implicate or infringe a defendant's federal constitutional right to confront the witnesses against him, unless the prohibited cross-examination might reasonably have produced a significantly different impression of the witness's credibility." (*In re Ryan N.* (2001) 92 Cal. App. 4th 1359, 1386, italics omitted).
>
> Defense counsel asked Ortiz if it was true that he could be charged with perjury if his trial testimony differed from what he had testified to at the preliminary hearing. The court sustained the prosecution's objection, finding the question to be argumentative. The cross-examination of the witness is always subject to a trial judge's broad discretion to impose reasonable limits to preclude interrogation "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." (*Van Arsdall*, *supra*, 475 U.S. 673, 679.) The court here did no more than it was permitted. It stayed well within the bounds of the "wide latitude" the Constitution affords it. (*Ibid.*) In any event, the jury had the opportunity to assess Ortiz's demeanor and make its own determination as to whether his fear of retaliation was genuine. In sum, we find no violation of defendant's rights under the confrontation clause.

(Resp. Ex. 6 at 8-10.)

On several occasions the Supreme Court has upheld the introduction of the prior inconsistent statement of witnesses who claimed at trial not to remember the relevant events. *See, e.g.*, *Owens*, 484 U.S. at 559-60; *Green*, 399 U.S. at 170. In *Green*, as in this case, even though the witness' lack of memory appeared disingenuous, it was not a constitutional violation to admit his prior preliminary hearing. *Green*, 399 U.S. at 151-52 (witness, after making several statements to police about drug deal, testified at trial that he could not remember relevant events because he was on LSD at the time of the drug deal). Similarly, in *Owens*, the victim's memory was impaired after being attacked by a prisoner. 484 U.S. at 556. While at the hospital, the

victim described the attack and identified the defendant as the attacker. *Id.* At trial, the victim testified that he remembered identifying the defendant, but could not remember actually seeing the attacker. *Id.* The Supreme Court held that there was no Confrontation Clause violation because the Clause only guarantees an *opportunity* for effective cross-examination. *Id.* at 559. Here, as in *Owens*, Petitioner received "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Id.* at 560 (citing *Green*, 399 U.S. at 158-61). Finally, in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court "reiterate[d] that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 60 n.9. Simply put, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Green*, 399 U.S. at 158. Here, Ortiz testified at trial, and was subject to cross-examination. Thus, the admission of Ortiz's prior out of court statements did not violate the Confrontation Clause. The California Court of Appeal decision was not contrary to, or an unreasonable application of, these decisions.

### 2. Sufficiency of the evidence

Petitioner claims that the evidence was insufficient to establish the element of "identity." Petitioner argues that Ortiz's refusal to point to Petitioner as the attacker during trial, combined with the fact that Ortiz stated he had no memory of what he said at the hospital or at the preliminary hearing establish that the evidence was insufficient to support the theory that Petitioner was the attacker.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443 U.S. 307, 326 (1979). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether that [jury] finding was so insupportable as to fall below the threshold of bare

rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012). Further, sufficiency claims on federal habeas review are subject to a "twice-deferential standard." *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012) (per curiam). First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable." *Id.* (quoting *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)).

The California Court of Appeal rejected this claim, noting that California law allows an out-of-court identification to be sufficient without corroboration to find that a specific person committed a crime. (Resp. Ex. 6 at 10.) The Court went on to say:

> It is well established that an out-of-court identification is sufficient to sustain a finding that an individual committed a crime. No corroborating evidence is required. (*People v. Cuevas* (1995) 12 Cal. 4th 252, 277 (*Cuevas*), overruling *People v. Gould* (1960) 54 Cal. 2d 621 (*Gould*)). Under *Cuevas*, the sufficiency of an out-of-court identification is determined under the substantial evidence test used to determine the sufficiency of other forms of evidence. In that regard, we "view the entire record in the light most favorable to the judgment and determine whether it discloses substantial evidence - i.e., evidence that is reasonable, credible, and of solid value-to support the [trier of fact's] finding" (*People v. Beeson* (2002) 99 Cal. App. 4th 1393, 1398), bearing in mind that it is the exclusive province of the trier of fact (here, the jury) to determine a witness's credibility. (*People v. Ochoa*, *supra*, 6 Cal. 4th 1199, 1206.) In particular, "[p]urported weaknesses in identification testimony of a single eyewitness are to be evaluated by the [trier of fact]." (*People v. Elwood* (1988) 199 Cal. App. 3d 1365, 1372.)
>
> . . .
>
> Here, notwithstanding Ortiz's refusal at trial to identify defendant as the person who assaulted him, the jury reasonably could have credited the testimony of Deputy Austin that Ortiz did identify defendant shortly after the attack. Moreover, the following factors militate in favor of the reliability of Ortiz's out-of-court identification: He knew defendant for about a month prior to the incident, he was able to observe defendant during the attack, he identified defendant the day after the attack, presumably when events were fresh in his mind, [FN6] and he corroborated that identification when he testified at the preliminary hearing. A reasonable jury could conclude that Ortiz was telling the truth both when he spoke to Austin and when he testified at the preliminary hearing, and that his failure to confirm the identification in court was due to his fear of possible retaliation. On this record, substantial evidence supported the finding that defendant committed the instant offense.
>
> FN6. While it is true Ortiz was given morphine in the hospital, and

> had suffered a head injury, the jury was fully apprised of these facts as it evaluated the accuracy of Ortiz's identification. Ortiz testified that when he was in the hospital he knew who assaulted him.
>
> Further, there is no basis for defendant's assertion that Ortiz delayed identifying defendant until the day after he arrived at the hospital in order to give himself an opportunity "to decide whether he could use his victim status to obtain a better and different life style through witness protection." Nor is there any basis to his assertion that Ortiz was "motivated to blackmail the prosecution into arranging for his better life" when he confirmed the identification at the preliminary hearing. Simply put, while witness protection programs are designed to keep witnesses safe, it is not readily apparent to us that these programs create "better" lives for those who participate in them.
>
> . . .
>
> In sum, while it is true that there was no evidence implicating defendant other than statements made by Ortiz, substantial evidence supports the conviction. Ortiz identified defendant as his attacker on more than one occasion. His stated reasons for refusing to identify defendant at trial were plausible, and did not cast doubt on the veracity of his earlier identifications. Further, defendant's alibi evidence was not compelling. It is not the function of this court to reweigh the evidence or redetermine issues of credibility. (*People v. Ochoa*, *supra*, 6 Cal. 4th 1199, 1206.) Viewing the evidence in the light most favorable to the prosecution, as we must, we cannot say that a reasonable trier of fact would not have been entitled to find defendant guilty based on Ortiz's pretrial identifications.

(Resp. Ex. 6 at 10, 12-13.)

If confronted by a record that supports conflicting inferences, as the record does here, a federal habeas court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The Court may not substitute its judgment for that of the jury. *See Coleman*, 132 S. Ct. at 2065 (finding Third Circuit erred in finding that there was no reasonable basis for the jury's conclusion that petitioner had a specific intent to kill victim and force was used simply because there was no testimony describing physical action by petitioner). Indeed, "it is the responsibility of the jury — not the Court — to decide what conclusions should be drawn from evidence admitted at trial." *Parker*, 132 S. Ct. at 2152 (quoting *Cavazos*, 132 S. Ct. at 4) (finding Ninth Circuit erred by substituting its judgment for that of California jury on the question whether the prosecution's or defense's expert witnesses more persuasively explained the cause of death)). Similarly here, though the jury clearly heard inconsistent statements from Ortiz identifying Petitioner as the attacker, the jury plainly resolved such

contradictions in favor of the prosecution. Based on the record, this Court cannot say that the state court's conclusion was an unreasonable application of *Jackson*.

### 3. Admission of prior identifications

Petitioner claims that the trial court violated his right to due process by admitting Ortiz's prior inconsistent statements into evidence. Specifically, Petitioner argues that the prosecution allowed Ortiz to commit perjury.

When a prosecutor obtains a conviction by the use of testimony which he knows or should know is perjured, it has been consistently held that such conviction must be set aside if there is any reasonable likelihood that the testimony could have affected the judgment of the jury. *See United States v. Agurs*, 427 U.S. 97, 103 (1976). To prevail, the petitioner "must show 'that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) . . . the false testimony was material.'" *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (quoting *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)); *see Schad v. Ryan*, 671 F.3d 708, 717 (9th Cir. 2011) (per curiam) (finding no prosecutorial misconduct where it was not entirely clear that prosecution witness had lied or, assuming he did, that the state knew or should have known that his testimony was false).

The state appellate court rejected this claim. It differentiated between testimony that could be characterized as perjurious as opposed to "deliberately evasive." (Resp. Ex. 6 at 14-15.)

"[M]ere inconsistencies in testimony do not establish the knowing use of false testimony by the prosecutor." *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001) (citing *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998)). "Additionally, the fact that a witness contradicts herself or changes her story also does not establish perjury." *Id.* (citing *United States v. Lebon*, 4 F.3d 1, 2 (1st Cir. 1993)). "Moreover, the presentation of a witness who recants or contradicts his or her prior testimony is not to be confused with eliciting perjury." *Id.* (citing *United States v. Wolny*, 133 F.3d 758, 763 (10th Cir. 1998)). Here, the California Court of Appeal concluded that Petitioner did not

1    establish that Ortiz committed perjury.  This conclusion was not contrary to, or an unreasonable
2    application of, clearly established federal law.

3        4.    <u>Jury instruction</u>

4        Petitioner claims that the trial court failed to fully instruct the jury regarding how to
5    weigh Ortiz's preliminary hearing testimony, in light of his refusal to identify anyone at trial.
6    Petitioner also alleges that the trial court failed to instruct the jury regarding how to weigh the
7    out-of-court identifications with the prosecution's burden of proof.

8        A challenge to a jury instruction solely as an error under state law does not state a claim
9    cognizable in federal habeas corpus proceedings.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72
10   (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show
11   that the ailing instruction by itself so infected the entire trial that the resulting conviction violates
12   due process.  *Id.* at 72.  The instruction may not be judged in artificial isolation, but must be
13   considered in the context of the instructions as a whole and the trial record.  *Id.*

14       The California Court of Appeal summarized the proceedings, and rejected Petitioner's
15   claim.

> During deliberations, the jury sent the court a note asking, "How much weight can we place on the preliminary evidence?"  The trial court ascertained that the jury was referring to Ortiz's testimony at the preliminary hearing.  Section 1138 states: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court.  Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and defendant or his counsel, or after they have been called."  After discussing the matter with the prosecutor and defense counsel, the court settled on the following response to the jury: "This court gave you an admonition during trial in regards to what a preliminary hearing is.  Please refer to instruction 318 as to how to use that evidence, as well as all the other instructions that deal with credibility of witnesses in determining what weight to give it."  The court denied defense counsel's request that it also specifically refer the jury to CALCRIM Nos. 226 and 315.
>
> CALCRIM No. 318, as read to the jury and provided to them in writing, states: "You have heard evidence of statements that a witness made before the trial.  If you decide the witness made those statements, you may use those statements in two ways; one, to evaluate whether the witness's testimony in court was believable; and two, as evidence *that the information in those earlier statements is true*." (Italics added.)  Defendant claims this instruction is misleading because the jury also has a right to treat the information in the earlier statements as false.

> Contrary to defendant's assertion, it is apparent that CALCRIM No. 318 does not compel the jury to conclude the prior statements are true. Rather, it permits the jury to consider the statements as true only if it first finds the witness did, in fact, make the earlier statements. (*See, e.g.*, *People v. Golde* (2008) 163 Cal. App. 4th 101, 120 ["Thus, the 'may' comes into play only after the jurors have found the statements were made."]) The instruction creates no presumption of truthfulness, nor does it speak in any way to how much credence such statements deserve in comparison with sworn testimony. As the instruction is not misleading, we see no error in the court's suggestion that the jury review it along with other instructions on weighing testimonial evidence.
>
> Defendant further claims the jury should have been instructed that even if it found the prior statements to be true, such a finding would not necessarily mean the jury had to find the statement was of sufficient weight to support a finding of proof of guilt beyond a reasonable doubt. This claim lacks merit. The jury was instructed pursuant to CALCRIM No. 220 that, in deciding whether the prosecution proved its case beyond a reasonable doubt, it "must impartially compare and consider *all* the evidence that was received throughout the entire trial." (Italics added.) The jury was further instructed pursuant to CALCRIM No. 226 that among the factors the jury could consider in evaluating a witness's credibility was, "Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony?" The jury was also instructed with CALCRIM No. 315, covering the questions to consider in evaluating identification testimony. We presume the jurors were "able to correlate, follow, and understand the court's instructions. . . ." (*People v. Ibarra* (2007) 156 Cal. App. 4th 1174, 1190.) [FN10]
>
>> FN10. In light of all the instructions given by the trial court concerning how to evaluate testimony, we also find no error in the trial court's failure to instruct the jury that it could consider Ortiz's refusal to testify in determining the weight of any prior identification statements.

(Resp. Ex. 6 at 19-20.)

Given the literal reading of CALCRIM No. 318, the state appellate court's conclusion that CALCRIM No. 318 was not misleading, nor did it compel the jury to find that the prior statements were true, is reasonable. Further, the trial court's refusal to emphasize CALCRIM Nos. 226 or 315 in addition to CALCRIM No. 318 is without merit. CALCRIM Nos. 226 and 315 were included within the jury instructions given to the jury. Thus, because the jury is presumed to follow its instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), it would have properly considered CALCRIM Nos. 226 and 315 even without the trial court's lack of emphasis in answering the jury's question.

Because Petitioner cannot demonstrate actual prejudice from an instruction error, *see*

*Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), the state court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

## CONCLUSION

Petitioner's petition for writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a COA is DENIED.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: 3/6/13

LUCY H. KOH
United States District Judge